IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ROBERT J. SERO, JR.,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

        Defendant.

No. C12-0061

RULING ON JUDICIAL REVIEW

---

**TABLE OF CONTENTS**

*I.*     *INTRODUCTION* ........................................ 2

*II.*    *PROCEDURAL BACKGROUND* ............................ 2

*III.*   *PRINCIPLES OF REVIEW* ................................ 3

*IV.*   *FACTS* .................................................. 5
     *A.*    *Sero's Education and Employment Background* ............... 5
     *B.*    *Administrative Hearing Testimony* ....................... 5
         *1.*    *Sero's Testimony* ................................. 5
         *2.*    *Vocational Expert's Testimony* ..................... 6
     *C.*    *Sero's Medical History* ................................ 8

*V.*    *CONCLUSIONS OF LAW* ................................. 14
     *A.*    *ALJ's Disability Determination* ......................... 14
     *B.*    *Objections Raised By Claimant* ......................... 16

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## *I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Robert J. Sero on June 28, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Sero asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Sero requests the Court to remand this matter for further proceedings.

## *II. PROCEDURAL BACKGROUND*

On June 22, 2009, Sero applied for disability insurance benefits. In his application, Sero alleged an inability to work since April 16, 2008 due to lower back problems. Sero's application was denied on September 2, 2009. On January 19, 2010, his application was denied on reconsideration. On February 25, 2010, Sero requested an administrative hearing before an Administrative Law Judge ("ALJ"). On May 16, 2011, Sero appeared via video conference with his attorney before ALJ Jeffrey Marvel for an administrative hearing. Sero and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated June 6, 2011, the ALJ denied Sero's claim. The ALJ determined that Sero was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Sero appealed the ALJ's decision. On May 7, 2012, the Appeals Council denied Sero's request for review. Consequently, the ALJ's June 6, 2011 decision was adopted as the Commissioner's final decision.

On June 28, 2012, Sero filed this action for judicial review. The Commissioner filed an Answer on September 14, 2012. On October 18, 2012, Sero filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On January 17, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 24, 2013, Sero filed a reply brief. On July 20, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not

only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id*. Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's

conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## *IV. FACTS*

### *A. Sero's Education and Employment Background*

Sero was born in 1960. He completed the eleventh grade in high school. He has no further education or training after the eleventh grade.

The record contains a detailed earnings report for Sero. The report covers the time period of 1976 to 2010. From 1976 to 1982, Sero had minimal earnings between $161.00 (1976) and $4,083.06 (1978). He had no earnings from 1983 to 1986. From 1987 to 2000, he earned between $3,878.20 (1989) and $27,619.00 (1997). In 2001 and 2002, Sero, again, had no earnings. He earned $8,326.00 in 2003, $12,579.13 in 2004, and $1,079.00 in 2005, but had no earnings in 2006. In 2007 and 2009, he earned $10,745.00 and $6,570.00, respectively. Sero has no earnings since 2009.

### *B. Administrative Hearing Testimony*

#### *1. Sero's Testimony*

At the administrative hearing, Sero testified that he stopped working in April 2008, after a 400 pound door fell on him, and hurt his back. Sero stated that his back condition has gotten worse since 2008. The ALJ asked Sero to describe his daily activities:

> Q: Okay. And what are you doing when you're home during the day?
> A: I'm just moving around and setting and getting up, moving around. It's all I can do, sir.
> Q: Do you go out for walks?
> A: Yeah, little ones. That kind of helps a little bit and then it'll flare up after when I'm done. You know, I'll have to relax.
> Q: Are you able to do any chores around the house?
> A: No. I can't even hardly do dishes anymore because it's standing too long.

| | |
|---|---|
| Q: | For how far can you walk or for how long a period of time can you walk without experiencing pain or discomfort that causes you to stop and rest? |
| A: | It's about five minutes. . . . |
| Q: | Yeah, what about standing in one place, like you were talking about doing dishes. For how long can you stand without having to rest? |
| A: | Not even five minutes or so. It's -- I got to keep moving or, you know, relax and, you know, just hard to sit and everything. |
| Q: | What about sitting down in a chair like you're sitting in now, do you have any problems? |
| A: | Yeah. It's uncomfortable. |
| Q: | For how long do you think you could sit without experiencing pain or discomfort that would cause you to get up and move around? |
| A: | I'm at discomfort right now. |
| Q: | So, about 15 minutes or so. |
| A: | Yeah, five to 15 minutes. |

(Administrative Record at 34-35.) Sero also told the ALJ that he had difficulty with depression because of "not working and not being able to do what I usually do."[2]

Sero's attorney also questioned Sero. Sero's attorney inquired whether Sero had difficulty concentrating and paying attention for long periods of time. Sero responded that he did have difficulty with concentration and attention. He stated that "I get sidetracked a lot."[3] Sero further stated that he has difficulty focusing due to pain. Lastly, Sero testified that he has difficulty with concentration, attention and focusing because he only sleeps two or three hours per night.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who:

_____

[2] Administrative Record at 37.

[3] Id. at 41.

> could occasionally lift 20 pounds and frequently lift ten
> pounds, who could stand and walk six hours out of an eight-
> hour day and sit for six hours out of an eight-hour day, who
> could occasionally balance, stop, crouch, kneel and climb, but
> no climbing of ladders, ropes or scaffolding and who could
> never crawl.

(Administrative Record at 45.) The vocational expert testified that under such limitations, Sero could not perform his past relevant work. The vocational expert further testified that Sero could perform the following jobs: (1) grip assembler in woodworking (400 positions in Iowa and 35,000 positions in the nation), (2) parts inspector in furniture and fixtures (1,000 positions in Iowa and 67,000 positions in the nation), and (3) assembly operator in woodworking (600 positions in Iowa and 62,000 positions in the nation). The vocational expert also testified that Sero could perform the following unskilled light jobs: (1) small products assembler (6,000 positions in Iowa and 700,000 positions in the nation), (2) labeler or ticketer (3,500 positions in Iowa and 140,000 positions in the nation), and (3) lot attendant (700 positions in Iowa and 136,000 positions in the nation). The ALJ asked the vocational expert a second hypothetical which was the same as the first hypothetical except that the individual could only stand and walk for two hours in an eight-hour workday and could occasionally crawl. The vocational expert testified that under such limitations, Sero could perform the following unskilled sedentary jobs: (1) assembler of electronic products (1,000 positions in Iowa and 100,000 positions in the nation), (2) addresser or mailer (600 positions in Iowa and 48,000 positions in the nation), and (3) photo process worker (290 positions in Iowa and 40,000 positions in the nation). The ALJ asked a third hypothetical which was identical to the second hypothetical except that the individual "would have more than two absences per month from work and need to take more than two unscheduled breaks per day." The vocational expert testified that under such limitations, Sero would be precluded from competitive employment.

Sero's attorney also questioned the vocational expert:

Q: Mr. Marquardt, if the hypothetical person due to severity of their pain and/or psychological problems had to work at a slow pace up to a third of the workday, would they be competitively employable?

A: They would not.

Q: If the hypothetical person needed to sit, stand, walk at will, with no limits on time for either or any of those options, would they be able to do any of the jobs in hypotheticals one and two?

A: Can we address the frequency of that at will?

Q: Like every five to fifteen minutes.

A: Competitive employment could not be sustained for an individual with the background and work experience of [Sero].

(Administrative Record at 48.)

## C. Sero's Medical History

On April 22, 2008, Sero met with various physicians and medical professionals complaining of low back pain. He rated his pain level at 9 on a scale of 1 to 10 with 10 being the highest level of pain. Sero also reported numbness, weakness, and tingling in his legs, with trouble walking at times. Upon examination, Sero was diagnosed with a lumbar strain. Dr. Mark T. Pospisil, M.D., recommended application of ice to Sero's back, physical therapy, and medication as treatment. On May 1, 2008, Sero met with Dr. Michael D. Jackson, M.D., complaining of continued low back pain. Sero's symptoms had not improved since April 22. Upon examination, Dr. Jackson diagnosed Sero with a lumbosacral strain and possible herniated disc. Dr. Jackson ordered an MRI for Sero. The MRI showed a diffuse disc protrusion at the L4-5 level. Sero was treated with epidural steroid injections in May and June 2008.

On August 19, 2008, Dr. Laura Griffith, D.O., reviewed Sero's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Sero. Dr. Griffith determined that Sero could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds,

8

(3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Sero could frequently climb ramps/stairs, occasionally balance, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations. Dr. Griffith concluded that:

> [Sero] has a [medically determinable impairment] of [degenerative disc disease] at L4-5 that is reasonably expected to result in pain and limitation. However, the severity indicated by [Sero's] allegations and symptoms is not consistent with the objective evidence. In addition, [Sero's] failure to keep up with [physical therapy] appointments further erode the credibility of his allegations. . . . All things considered, [Sero] is capable as outlined in this RFC.

(Administrative Record at 484.)

In September 2008, Sero had a second MRI of his back. Dr. Michael Macke, M.D., opined that the MRI was not "significantly changed" from the May 2008 MRI. Specifically, Dr. Macke found degenerative disc disease most severe at the L4-5 level with a diffuse disc bulge and moderate central canal stenosis. In November 2008, Sero continued to have difficulties with low back pain. He told doctors that sitting "for any length of time" made the pain worse. Doctors recommended continued use of medication and physical therapy as treatment.

On February 5, 2009, Sero met with Dr. James T. Brunz, M.D., with continued low back pain. Dr. Brunz noted that:

> [Sero's] back and hip pain are described as a constant aching pain which is exacerbated by standing, walking, and bending. He also endorses intermittent shooting electrical pain from the right hip down into the posterior aspect of the leg, into the lateral calf and then finally into the arch of the foot. He endorses numbness and tingling in the same distribution which is intermittent and spontaneous in nature.

(Administrative Record at 648.) Upon examination, Dr. Brunz diagnosed Sero with myofascial back pain and apparent right L5 radiculopathy. Dr. Brunz recommended aquatherapy and medication as treatment. Dr. Brunz also administered a selective nerve root block at the right L5 vertebrae.

On August 25, 2009, Sero underwent a disability evaluation by Dr. Jean Hammill, DPT. Upon examination, Dr. Hammill found diminished sensation of L5 dermatome lateral calf, mildly diminished reflex right knee, and some global weakness mostly affecting his "gluteals and abductors right hip." Dr. Hammill also opined that Sero may have some degenerative joint disease in the right hip. Additionally, Dr. Hammill performed functional testing:

> [Sero] was able to get up and down from the floor and transfer without difficulty. He was able to kneel for a minute and a half with 45 seconds on each knee. He was able to crawl for 10 feet and get up on his feet without difficulty. With floor to waist lifting, [Sero] was able to lift 15 pounds. We started at 5 pounds and 10 pounds, and then his technique deteriorated as he got to 15 pounds. He also complained of some low back pain with this amount of weight. This seems to correspond with what he does around the house according to him, that he is just doing some cooking, dishes, and taking care of some grandkids but not lifting them much. He is not taking out the garbage or doing any lawn work.

(Administrative Record at 719.)

On August 26, 2009, Sero was referred by DDS to Dr. Roger E. Mraz, Ph.D., for a psychological evaluation. In reviewing Sero's medical history, Dr. Mraz noted that Sero "manages his self care needs and most of the household chores. However, he is not able to do much pushing, pulling, or lifting due to his back problems."[4] Sero reported increasing symptoms of depression due to his back problems and inability to work.

---

[4] Administrative Record at 728.

Dr. Mraz noted that "[h]e has not been treated for depression, but according to his wife, he is self medicating with alcohol."[5] Upon examination, Dr. Mraz found that Sero had "no difficulty with working memory, indicating that he can focus his attention, concentrate, and remember information long enough to perform mental operations. He is also able to remember and carry out four simple instructions in their proper sequence."[6] Dr. Mraz administered the Beck Depression Inventory-II test to Sero, which endorsed mild to moderate symptoms of depression. Dr. Mraz diagnosed Sero with adjustment disorder with depressed mood and alcohol abuse. Dr. Mraz concluded that:

> [Sero] presented no evidence of a thought disorder or perceptual abnormalities. Mood was slightly depressed, and he endorsed mild to moderate symptoms of depression. He presented no significant memory problems, and should have no difficulty remembering and carrying out simple or complex directions. However, [Sero] and his wife reported that when he takes Gabapentin for the pain in his back, he experiences significant memory problems. I encouraged [Sero] to get a second opinion on the use of this particular medication.
>
> [Sero] manages most of his self care need and the household chores, limited only by his physical problems. . . .

(Administrative Record at 729-30.)

On September 1, 2009, Dr. Myrna Tashner, Ed.D., reviewed Sero's medical records and provided DDS with a psychiatric review technique assessment for Sero. Dr. Tashner diagnosed Sero with adjustment disorder with depressed mood and alcohol abuse. Dr. Tashner determined that Sero had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tashner concluded that:

---

[5] *Id.*

[6] *Id.* at 729.

[Sero's] primary reason for not working is back injury. . . .
He has depression related to this physical injury; however, he
has never been formally treated. He was sent for a
[consultative examination] where it was determined that he
self-medicates with alcohol which exacerbates his depression.
He also has a reaction to a [prescribed] medication,
Gabapentin, which exacerbates his depression. In [] spite of
that, he was able to follow four-step directions, had no thought
disorder or perceptual problems, mood was slightly depressed.
He denied problems getting along with others. He was noted
to have no significant memory problems and should be able to
remember and carry out simple or complex directions. He has
been a responsible employee in the past but shows poor
judgment in regard to using alcohol to self medicate. . . . He
indicates deficits in [activities of daily living are] due to his
physical problems. . . . Although he has severe impairments,
they do not functionally rise to more than a minimal restriction
on his ability to function and would be considered to be non
severe.

(Administrative Record at 743.)

On September 2, 2009, Dr. Donald Shumate, D.O., reviewed Sero's medical
records and provided DDS with a physical RFC assessment for Sero. Dr. Shumate
determined that Sero could: (1) occasionally lift and/or carry 20 pounds, (2) frequently
lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least 2 hours
in an eight-hour workday, and (4) push and/or pull without limitations.[7] Dr. Shumate also
determined that Sero could occasionally climb ramps/stairs, balance, stoop, kneel, and
crouch, but never climb ladders, ropes, or scaffolds and crawl. Dr. Shumate found no
manipulative, visual, communicative, or environmental limitations.

---

[7] Interestingly, Dr. Shumate offered no opinion on Sero's ability to sit with normal
breaks in an eight-hour workday. Dr. Shumate's notes on his evaluation also offer no
insight into his reasoning for not providing an opinion on this particular functional ability.
*See* Administrative Record at 746-47.

In May 2010, Sero met with Dr. Robert A. Beck, M.D., complaining of back pain. Dr. Beck noted that Sero's back pain had "been well controlled in the past, but recently has been more bothersome to him."[8] Dr. Beck further noted that:

> The increased pain has limited [Sero's] activities, but more importantly has adversely affected his sleep. [Sero] describes his pain as located in the lower back and now radiates down his [right] leg to his foot. Also notes episodes of decreased sensation on his [right] foot. Has noted no increased weakness in his [right] leg.

(Administrative Record at 787.) Sero rated his back pain at 7 on scale of 1 to 10. Sero also complained about symptoms of depression that started two weeks prior to the appointment. Sero reported a depressed mood and diminished interest in usual daily activities. Upon examination, Dr. Beck diagnosed Sero with chronic depression and chronic sciatica. Dr. Beck recommended physical therapy and medication as treatment.

In January 2011, Sero met with Dr. Qadnana Anwar, M.D., complaining of increased back pain due to helping his family move. Sero rated his back pain at 5 on a scale of 1 to 10. Upon examination, Dr. Anwar diagnosed Sero with chronic sciatica and right lumbar radiculopathy. Dr. Anwar recommended medication as treatment. Dr. Anwar also cautioned that "I can not make him pain free 100% with med[ication], I can help him feel comfortable to go [o]n [and] do his activities but can not take away the pain completely, he will always have some degree of pain[.]"[9]

In April 2011, Sero met with Dr. Kira Fraser, M.D., regarding low back pain. Dr. Fraser noted that Sero "was last seen [at the University of Iowa Hospitals and Clinics on] 7/16/2009 where he was found to have myofascial pain in addition to L5

---

[8] Administrative Record at 787.

[9] Administrative Record at 802.

radiculopathy."[10] Dr. Fraser further noted that Sero reported "he had pain relief for almost a year after the selective nerve root block, but the pain came back and has been limiting his activity significantly."[11] Sero described his pain as a constant ache with throbbing in his lower back and stabbing pain into his hip. He rated his pain at 8 out of 10 while resting and 10 out of 10 with activity. He stated that his pain is "exacerbated with walking, standing and bending forward."[12] Upon examination, Dr. Fraser diagnosed Sero with low back pain. Dr. Fraser ordered an MRI and treated Sero with medication. The MRI showed multilevel spinal canal stenosis which was most severe at L4-L5. The MRI also showed severe right-sided neuroforaminal stenosis at L4-L5.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Sero is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);

---

[10] *Id.* at 844.

[11] *Id.*

[12] *Id.*

14

*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical

15

records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Sero had not engaged in substantial gainful activity since April 16, 2008. At the second step, the ALJ concluded from the medical evidence that Sero had the following severe impairment: degenerative disc disease of the lumbar spine. At the third step, the ALJ found that Sero did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Sero's RFC as follows:

> [Sero] had the residual functional capacity to perform light work . . . such that he could lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk six hours in an eight hour workday; sit for six hours in an eight hour workday; occasionally balance, stoop, crouch, and kneel; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and never crawl.

(Administrative Record at 13-14.) Also at the fourth step, the ALJ determined that Sero was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Sero could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Sero was not disabled.

### B. Objections Raised By Claimant

Sero argues that the ALJ failed to properly weigh and evaluate the opinions of Dr. Shumate, a non-examining consultative doctor. Specifically, Sero argues that Dr. Shumate's opinions regarding his RFC limited him to only "sedentary" work. Sero contends that the ALJ incorrectly limited him to "light" work in the ALJ's RFC assessment. Sero maintains that Dr. Shumate's opinions regarding his RFC are significant because, if Dr. Shumate's opinions were properly weighed and evaluated, *and* the ALJ followed Dr. Shumate's opinions finding Sero limited to only "sedentary" work, *and* the

16

ALJ found Sero to be "closely approaching advanced age," then under the regulations, Sero would be found disabled. Sero asserts that this matter should be remanded for further consideration of these issues.

In response, the Commissioner argues that the ALJ properly considered and weighed Dr. Shumate's opinions. The Commissioner further argues that the ALJ's RFC assessment for Sero was proper, including limiting Sero to "light" work, instead of limiting him to only "sedentary" work. Accordingly, the Commissioner argues that Sero's argument regarding a finding of disability under the regulations is misplaced, and need not have been considered by the ALJ. The Commissioner concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). An ALJ is also required to "'explain in the decision the weight given to the opinions of a State agency medical . . . consultant[.]'" *Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008) (quoting 20 C.F.R. § 404.1527(f)(2)(ii)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is

no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In his decision, the ALJ thoroughly addressed the opinions of Dr. Shumate:

> Also in September 2009, on behalf of Disability Determination Services, Donald Shumate, D.O., reviewed [Sero's] medical history for the relevant period and noted [Sero's] medically determinable impairments of lumbar degenerative disk disease, L5 radiculopathy and diabetes. Dr. Shumate opined [Sero] could lift and carry twenty pounds occasionally, ten pounds frequently; stand/walk at least two hours in an eight hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, or crouch; and never crawl. Dr. Shumate noted that [Sero] complained of lumbar pain that radiated into both lower extremities. He stated he had noted weakness and his legs giving out but had specifically denied significant weakness on multiple treating source visits. . . .

(Administrative Record at 18.) The ALJ further outlined Dr. Shumate's discussion of Sero's medical history, including inconsistencies with Sero's claims of leg pain and weakness:

[Sero] had acute onset of lumbar pain in April 2008. . . . He had 4/5 strength of bilateral hip flexors and intact sensation. Lumbar range of motion was limited and straight leg raising caused lumbar pain but no radicular symptoms. He was sent for physical therapy and continued on medications with initial diagnosis of lumbar strain. . . . Repeated MRI in September 2008 showed no change from the previous study and he went to the UIHC. Examination showed positive straight leg raising on the right and absent right patellar reflex. He had 5/5 power in all extremities. . . . He was referred to pain clinic in November 2008 and examination showed strength of hip flexors bilaterally 4/5 and straight leg raising produced lumbar pain without radicular symptoms. . . . The treating source note did state [Sero] shifted positions in the chair frequently. Medical management was recommended. He was again seen in February 2009 and exam showed normal strength. Gait was stable and he was able to walk on toes and heels without difficulty. . . . [Sero] had physical therapy evaluation in August 2009[.] . . . He was able to easily transfer to sitting, rolling supine, and prone positions and was able to get up and down from the floor with ease. . . .

(Administrative Record at 18-19.) The ALJ concluded that:

Dr. Shumate's opinion is considered as that of a non-treating specialist. As his opinion is only somewhat consistent with the record as a whole, it has been given only some weight. The undersigned finds that the record of evidence supports a light residual functional capacity, as set forth above, as compared to the sedentary residual functional capacity suggested by Dr. Shumate.

(Administrative Record at 19.)

Here, the ALJ thoroughly reviewed Sero's medical records and fully considered the opinions of treating and consultative sources.[13] Specifically, the ALJ addressed Dr. Shumate's opinions and determined that "some" weight should be given to his opinions. The ALJ reasoned that Dr. Shumate's opinions were only "somewhat"

---

[13] *See* Administrative Record at 14-19.

consistent with the record as a whole. In particular, the ALJ found that the evidence in the record supported a light residual functional capacity as opposed to a sedentary residual functional capacity.[14] The ALJ also found that as of March 2010, "clinical notes indicated [Sero] was doing well overall. . . . [Sero] was taking Flexeril and Gabapentin which was taking care of most of his pain and allowed him to perform daily routines."[15] The Court finds that the ALJ properly articulated his reasons for granting "some" weight to Dr. Shumate's opinions, and for finding Dr. Shumate's opinions to have some inconsistencies with the record as a whole. *See Wagner*, 499 at 848; *see also Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) (providing that an ALJ may give less weight to the opinions of a doctor, where a claimant's activities of daily living do not reflect the limitations assessed by the doctor). Furthermore, while the ALJ may not have incorporated all of the limitations opined by Dr. Shumate, the Court nevertheless finds that the ALJ properly considered Dr. Shumate's opinions and addressed them in his decision. *See Wagner*, 499 F.3d at 848. For example, the ALJ incorporated both Dr. Shumate's lifting and postural limitations into his RFC assessment for Sero. Such findings are consistent with an RFC to perform light work, as determined by the ALJ. *See* 20 C.F.R. § 404.1567(b).

Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Sero's medical records, observations of treating physicians, and Sero's own description of his limitations in making the RFC assessment for Sero.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the

---

[14] *See id.* at 14-16 (providing evidence from multiple examining and non-examining sources which support a "light" residual functional capacity assessment).

[15] *Id.* at 19.

[16] *See* Administrative Record at 14-21.

medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Because the Court concludes that the ALJ made a proper RFC assessment, the Court finds that Sero's argument regarding sedentary work, "closely approaching advanced age," and the regulations is without merit.[17]

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record in this matter. Specifically, the ALJ properly addressed, considered, and weighed the medical evidence and opinions in the record, including the opinions of Dr. Shumate. Furthermore, the ALJ properly considered Sero's medical records, observations of treating and non-treating physicians, and Sero's own description of his limitations in making his RFC assessment for Sero. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

---

[17] Sero argues that assuming the ALJ had followed Dr. Shumate's opinions and found his RFC to be for only "sedentary" work, *and* the ALJ found him to be "closely approaching advanced age," then under the regulations, he should have been found disabled. Table No. 1, Rules 201.09 and 201.10 in 20 C.F.R. Pt. 404, Subpt. P, App. 2, provide that an individual limited to sedentary work, closely approaching advanced age, with unskilled or non-transferable skilled or semi-skilled work experience should be found disabled. *Id.* Rules 201.09 and 201.10 are not applicable in this case because the Court determined that the ALJ properly determined Sero's RFC assessment as limited to "light" work and not "sedentary" work. Even if the ALJ determined that Sero was "closely approaching advanced age," because the Court has determined that the ALJ properly determined Sero's RFC assessment, Sero's age category has no bearing on his disability determination. Accordingly, the Court finds Sero's argument with regard to the issue of sedentary work, "closely approaching advanced age," and the regulations to be without merit.

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___7th___ day of May, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA